**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Grzegorz Kutrzepa,<br><br>       Plaintiff,<br><br>      v.<br><br>American Medical Association, Toni Canada, Neli Fanning, Diane Galligan, Audiey Kao, and Kyle Palazzolo<br><br>      Defendants. | Case No. 24-CV-2313<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Grzegorz Kutrzepa brings this employment action against the American Medical Association ("AMA") and individual defendants Toni Canada, Neli Fanning, Diane Galligan, Audiey Kao, and Kyle Palazzolo. In his First Amended Complaint [18], Plaintiff alleges discrimination based upon his sincere religious beliefs, in violation of Title VII of the Civil Rights Act of 1964; Breach of Contract; Intentional Infliction of Emotional Distress (IIED); and Wrongful Termination. [18]. Defendants move to dismiss Plaintiff's Title VII and IIED claims under Federal Rule of Civil Procedure 12(b)(6). [21]. For the reasons explained below, the Court grants in part, and denies in part, Defendants' motion.

## I.    **Complaint Allegations**[1]

Plaintiff's complaint alleges the following facts, which the Court accepts as true for purposes of this motion.  Plaintiff is an Illinois resident and former employee of AMA, a nonprofit corporation headquartered in Chicago, IL.  [18] at ¶¶ 12, 26. Plaintiff worked for AMA as a painter for nearly five years and he was a member of the Painter's Union. *Id.* at ¶¶ 32, 35. Prior to the COVID-19 pandemic, his daily duties included painting and general maintenance, both of which he performed alone. *Id.* at ¶ 33.

In 2020, in the early onset of the pandemic, Plaintiff's responsibilities expanded to include workplace disinfection for AMA staff.  *Id.* at ¶ 34.  Plaintiff states that, during this time, he complied with AMA's COVID-19 safety protocols: he wore a mask, underwent regular COVID-19 testing and temperature checks, continued to sanitize office areas used by AMA staff, and maintained compliance with all health precautions while continuing to work on-site.  *Id.* at ¶¶ 34, 39–40.

On June 29, 2021, AMA announced that all employees must be fully vaccinated against COVID-19.  *Id.* ¶ 40.  AMA's policy allowed employees to apply for medical and religious exemptions.  *Id.* ¶ 42.  On July 1, 2021, Plaintiff emailed AMA's Human Resources (HR) department to request a religious exemption based on his Catholic beliefs.  *Id.* at ¶ 43.  On August 12, AMA notified Plaintiff that he would be placed on unpaid leave starting September 1st.  *Id.* at ¶ 47.  At this time, AMA had not yet

---

[1] This Court takes these facts from Plaintiff's First Amended Complaint, [18], and accepts them as true for purposes of resolving the motion to dismiss.  *See Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

released a vaccine exemption request form, so Plaintiff had not been able to request an exemption to AMA's COVID-19 Vaccination Policy. *Id.* at ¶¶ 48–49. Once placed on unpaid leave, Plaintiff filed a charge of discrimination with the EEOC. *Id.* at ¶ 84.

Plaintiff received the exemption request forms on August 20th. *Id.* at ¶ 51. He submitted his formal exemption request on August 24th, detailing his Christian beliefs which conflicted with taking the COVID-19 vaccine. *Id.* at ¶ 52. The following day, Plaintiff alleges Defendant AMA issued a work order to hire another painter. *Id.* at ¶ 54.

On August 30th, HR told Plaintiff that he would be switched from unpaid leave (Plaintiff's status for several weeks) to a paid leave of absence while his request was under review. *Id.* at ¶ 58. Plaintiff then remained on paid leave until AMA ultimately denied his request for a religious exemption on December 15th. *Id.* at ¶ 64.

While acknowledging the sincerity of his religious beliefs, AMA stated that accommodating Plaintiff's request would pose a danger to other employees. *Id.* at ¶¶ 64, 66–67. Plaintiff appealed the denial on December 21, 2021. *Id.* at ¶¶ 69–70. The AMA Appeals Committee, comprised of Individual Defendants Toni Canada, Neli Fanning, Diane Galligan, Audiey Kao, and Kyle Palazzolo, denied Plaintiff's appeal on February 9, 2022. *Id.* at ¶¶ 71, 82. Plaintiff alleges that his exemption was denied despite his proposals for accommodation, which included wearing personal protective equipment, submitting to COVID-19 testing, temperature checks and daily accountability reporting, and working modified shifts to avoid contact with others. *Id.* at ¶¶ 85–86. Plaintiff alleges that AMA failed to consider these alternatives. *Id.*

On March 2, 2022, Plaintiff renewed his religious exemption request for accommodation, again reiterating his willingness to comply with his proposed safety measures. *Id.* at ¶¶ 85–86. AMA never responded to his request, and subsequently informed Plaintiff that he would be terminated on March 21, 2022 for his failure to comply with the vaccine mandate. *Id.* at ¶ 91.

Following his termination, Plaintiff alleges AMA posted a job opening for Plaintiff's former position and indicated that new applicants could obtain a religious exemption from the vaccine policy. *Id.* at ¶ 100. Plaintiff further claims that when he attempted to amend his EEOC charge following his termination, AMA falsely reported to the EEOC that he voluntarily resigned, which initially barred his access to unemployment benefits. *Id.* at ¶¶ 102–103. Due to his termination and inability to obtain similar employment, Plaintiff was forced to relocate his family out of the Chicago area. *Id.* at ¶ 110.

Plaintiff filed his original complaint on March 20, 2024. [1]. On August 13, 2024, Defendants moved to dismiss portions of the Plaintiff's complaint for failure to state a claim, specifically Count I (Title VII religious discrimination claim) and Count III (intentional infliction of emotional distress claim under Illinois law). [14]. In response, Plaintiff filed a First Amended Complaint on September 3, 2024, reasserting both claims and adding the individual defendants as parties. [18]. Defendants again moved to dismiss Plaintiff's Title VII and IIED claims. [21].

4

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include, "a short and plain statement of the claim showing that the pleader is entitled to relief," thereby affording defendants "fair notice" of the claims against them and the "grounds upon which [those claims] rest." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard, however, "requires more than an unadorned…accusation." *Id.* "Threadbare recitals of the elements of a cause of action," and mere conclusory statements, "do not suffice." *Id.*

In reviewing a 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and construe the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in plaintiff's favor. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). While plaintiffs need not plead particularized facts, the factual allegations must be

sufficient to raise a plausible right to relief above the speculative level. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). The Court is not required to accept legal conclusions or conclusory allegations as true. *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 556 U.S. at 681).

## III. Analysis

### A. Title VII Discrimination Claim

For a religious discrimination claim under Title VII to survive a motion to dismiss, the plaintiff must allege the following elements: "(1) the observance or practice conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance or practice to the employer's attention; and (3) the religious observance or practice was the basis for the employee's discharge or other discriminatory treatment." *See Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449–50 (7th Cir. 2013) (internal quotations omitted).

Courts consider three factors when determining whether a belief is in fact religious for purposes of claims under Title VII: "(1) the belief necessitating the accommodation must actually be religious, (2) that religious belief must be sincerely held, and (3) accommodation of the employee's sincerely held religious beliefs must not impose an undue hardship on the employer." *Id.* at 448 (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 901 n. 12 (7th Cir. 1978)). If the plaintiff successfully pleads these elements, "the burden then shifts to the employer to show that it could not accommodate the employee's religious belief or practice without causing the employer

undue hardship." *Id.* (citing *Baz v. Walters*, 782 F.2d 701, 706 (7th Cir. 1986)). In their motion, Defendants argue that Plaintiff failed to establish a sincerely held religious belief that conflicted with the COVID-19 vaccine, and that any attempt to accommodate Plaintiff would place an undue hardship on AMA. [21] at 5–6, 8. The Court addresses these arguments below.

### a. Sincerity of Plaintiff's Religious Beliefs

Plaintiff alleges that Defendants violated Title VII when they placed him on unpaid leave and subsequently fired him for refusing to comply with the vaccine mandate due to his sincere religious beliefs. [18] at ¶¶115, 118, 121, 123. Defendants claim Plaintiff's objection to the vaccine mandate stemmed from political opposition to the policy, rather than any sincerely held religious doctrine, rendering Title VII inapplicable to this conduct. [21] at 7. Not so.

Title VII forbids employers from discriminating on account of an employee's religion. *See* 42 U.S.C. § 2000e-2(a)(1); *see also Reed v. Great Lakes Cos.*, 330 F.3d 931, 934–35 (7th Cir. 2003). The statute broadly protects "all aspects of religious observance and practice, as well as belief," unless the employer can show that accommodation would result in an undue hardship. 42 U.S.C. § 2000e(j). Even unconventional or non-mainstream religious beliefs warrant protection under Title VII. See *Adeyeye*, 721 F.3d at 451. But only "*religious* beliefs, observances, and practices must be accommodated" and it "is not enough for the belief to be religious in nature, it must also be the employee's own religious belief." *Id.* Moreover, courts must refrain from scrutinizing theological validity of beliefs, and instead focus upon

7

whether the plaintiff's religious conviction is "sincerely held" and constitutes "a belief that is considered religious in the person's own scheme of things." *Id.* (quotation omitted).

The Seventh Circuit applied these long-standing principles in *Passarella v Aspirus Inc.,* 108 F.4th 1005, 1007 (7th Cir. 2024) and *Bube v Aspirus Inc.,* 108 F.4th 1016 (7th Cir. 2024). In *Passarella*, the plaintiff objected to the COVID-19 vaccine based in part upon her Catholic beliefs, claiming that she could not comply with her employer's vaccine mandate because of the vaccine's use of aborted fetal cells, which conflicted with her religious belief in the "sanctity of the body." *Passarella*, 2024 WL 1328651 at *1007–1008. Although her exemption request also referenced doubts about the safety and efficacy of the vaccine, the Seventh Circuit emphasized that a Title VII claim may survive dismissal so long as it is based, "in part on religious belief." *Id.* at *1007. The court further underscored that a plaintiff's multifaceted motivations do not bar a claim, and an employee's claim survives when the "employee seeks an accommodation" and that "request, by its terms, is plausibly based at least in part on some aspect of their religious belief or practice." *Id.*

Similarly, in *Bube*, the Seventh Circuit reversed the lower court's dismissal of religious discrimination claims brought by two nurses whose employer denied their COVID-19 vaccine exemption requests. *Bube*, 108 F.4th at *1018–19. The court again emphasized "that an accommodation request invokes or even rests in the main on secular considerations does not negate its religious nature." *Id.* at 1019–20 (citing *Passarella*, 108 F.4th at 1007).

8

Here, like the plaintiffs in *Bube* and *Passarella*, Plaintiff's claims reflect more than conclusory or generalized assertions. In Plaintiff's exemption request provided with his First Amended Complaint, he details his religious basis for refusing the COVID-19 vaccine. [18] at Ex. 2. Specifically, Plaintiff relays his religious objection to the vaccine's use of aborted fetal cells and describes the theological conflicts the vaccine poses to his Christian faith. *Id.* Plaintiff adds that he refrains from receiving any vaccinations, stating that the "immunization process opposes my personal interpretation of the word of God that I hold sacred." *Id.*

Read as a whole, Plaintiff's accommodation request easily satisfies the standard articulated in *Adeyeye* and reaffirmed in *Passarella* and *Bube*. Plaintiff's request clearly stated his religious objection to the vaccine and articulated the nature of his personal beliefs that conflicted with Defendants' policy. Because "Title VII protects conduct which is 'religiously motivated,' i.e., all forms and aspects of religion, however eccentric," and Plaintiff clearly grounded his request in a religious motivation, his claim more than satisfies the requirements to survive a motion to dismiss. *Passarella*, 108 F.4th at 1011 (internal quotation omitted). Even if Plaintiff also maintained an underlying political objection to the vaccine, any such motivation does not negate the religious character of Plaintiff's request for purposes of this motion. *See id.* ("Perhaps above all else, then, one guidepost is clear: courts should not undertake to dissect religious beliefs because they are not articulated with the clarity and precision that a more sophisticated person might employ.") (quotation omitted) (cleaned up).

9

Defendants rely on cases where plaintiffs only invoked vague religious language, with some claiming secular motivations about "bodily autonomy" or otherwise only making brief references to Christianity, without any discussion of *their* beliefs or any demonstration at all of a conflict between the mandate and *their* personal faith. *See* [21] at 6 (citing *Nelson-Godfrey v. Cook Cnty.*, No. 23 C 16893, 2024 WL 2722668 (N.D. Ill. May 28, 2024); *Hassett v. United Airlines, Inc.*, No. 23 C 14592, 2024 WL 1556300 (N.D. Ill. Apr. 10, 2024); *Guthrie-Wilson*, 2023 WL 8372043 (N.D. Ill. Dec. 4, 2023)). *But see Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, at 451–52 (7th Cir. 2013) (holding that a plaintiff's personal and sincerely held religious practices, even if unfamiliar to others or not part of an organized religion, are protected under Title VII).

Without doubt, these cases remain distinguishable because unlike those plaintiffs, here, Plaintiff's request offered an account of his personal religious beliefs. Indeed, Plaintiff's request cited biblical scripture, provided his personal moral reasoning and religious doctrine behind his objection, and articulated that he maintains consistent practice of vaccine refusal extending over two decades. [18] at Ex. 2. Contrary to the Defendants' assertions, he does not merely express political disagreement with the policy; he articulates a religious conflict with the vaccine requirement supported by his own theology and personal religious practice. *Id.*

As such, his claims satisfy the requirements articulated in *Passarella* and *Bube*, and therefore the Court must deny Defendants' motion as to Count I.

### b. Accommodation as a Matter of Undue Hardship

Plaintiff alleges Defendant AMA refused to grant him a religious exemption to the COVID-19 Vaccination Policy when reasonable accommodations were available. [18] at ¶ 118. Defendants argue that Plaintiff's claim should be dismissed because he fails to allege any accommodation that was reasonably available without imposing an undue hardship on AMA. [21] at 8. Specifically, Defendants contend that exempting Plaintiff from the COVID-19 vaccine policy would have posed a danger to other AMA employees, required AMA to create a separate shift for Plaintiff, hire additional security personnel, and modify union agreements. [21] at 10–12. Again, not so.

Title VII requires employers to reasonably accommodate an employee's religious observance or practice unless doing so would impose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); *see also Rodriguez v. City of Chicago*, 156 F.3d 771, 775 (7th Cir. 1998) (quoting *Ansonia Bd. Of Educ. V. Philbrook*, 479 U.S. 60, 70 (1986)). An employer must "reasonably accommodate an employee's practice of religion," not merely "assess the reasonableness" of a particular "possible accommodation or accommodations." *Groff v. DeJoy*, 600 U.S. 447, 473 (2023).

At best, Defendants' reliance on an undue hardship theory as grounds for dismissal under Rule 12(b)(6) is premature. In *Passarella*, the Seventh Circuit emphasized that questions of undue hardship require extensive factual development and thus cannot be resolved at the pleading stage. *See Passarella*, 108 F.4th at 1011–

11

1012. The court in *Passarella* explicitly recognized that after surviving a motion to dismiss, the defendant will have the opportunity to "make an evidentiary showing that it is 'unable to reasonably accommodate [the employee's] religious observance or practice without undue hardship on the conduct of [its] business.'" *Id.* In fact, after completion of a full discovery process, both parties will have the opportunity to offer factual support for their respective positions on whether any accommodation was reasonable or feasible. *Id.*

*Passarella*'s decision reinforces established precedent that the determination of whether accommodation is reasonable in a particular case "must be made in the context of the unique facts and circumstances of that case." *Rodriguez v. City of Chicago*, 156 F.3d 771, at *776–77 (7th Cir. 1998); see also *EEOC v. W.W. Grainger, Inc.*, No. 95 C 5610, 1997 WL 399635, at *4 (N.D. Ill. July 11, 1997) ("Generally, whether the employer's proposed accommodation was 'reasonable' is a question of fact for the jury, rather than a question of law for the court.") (citation omitted); *Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013); *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011). Given the Seventh Circuit's clear instructions on this issue, Defendant's arguments regarding undue hardship lack a sufficient factual basis at this stage in the litigation.

Nevertheless, Defendants argue that questions of undue hardship can be resolved as a matter of law, rather than fact, when the proposed accommodation, "caused or increased safety risks or the risk of legal liability for the employer." [21]

at 9. This assertion simply ignores precedent, wherein the Seventh Circuit, and other circuits, have explicitly rejected such a preemptive approach.

For example, in *Bazinet v. Beth Israel Lahey Health, Inc.,* the First Circuit ruled that the issue of undue hardship is an affirmative defense; thus, it cannot be resolved on a Rule 12(b)(6) motion unless the defense is apparent from the face of the complaint. *See Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 18–19 (1st Cir. 2024). The First Circuit found that, absent factual development, the defendant hospital's assertions about health and operational risks could not justify dismissal, especially where the plaintiff in that case alleged that similar exemptions were granted to other employees for medical reasons and thus her request also warranted individualized consideration. *Id.* at 19.[2]

Here, like the plaintiff in *Bazinet*, Plaintiff's religious accommodation claim cannot be dismissed based solely upon Defendants' conclusory assertions about operational burdens and safety risks. Just as the hospital in *Bazinet* made unsupported claims about health and operational risks without factual development,

---

[2] *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 606 (7th Cir. 2022) ("Further, a law is not generally applicable if it provides 'a mechanism for individualized exemptions' or 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," and "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason.") (*quoting Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522 (2021) and *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872 (1990); *Dr. A v. Hochul*, 142 S. Ct. 552, 556 (2021) ("Recently, a majority of this Court reiterated that a law loses its claim to general applicability when it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way'" and that "is exactly what New York's regulation does: It prohibits exemptions for religious reasons while permitting exemptions for medical reasons.") (J. Gorusch dissenting) (citing *Fulton* v. *Philadelphia*, 593 U. S. 522 (2021)); *See also, Miller v. McDonald*, __ S. Ct. __, 223 L. Ed. 2d 270 (Dec. 8, 2025) (Petition for writ of certiorari granted, and case remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Mahmoud v. Taylor*, 606 U.S. 522 (2025)).

Defendants here make broad assertions about perceived dangers to employees, staffing modifications, and union agreement changes without providing any concrete evidence of the actual risks or burden that accommodations might impose. [21] at 10–12. Moreover, as in *Bazinet*, Plaintiff also alleges that AMA granted exemptions in other contexts.[3]

Given the record, the *Bazinet* decision, together with the Seventh Circuit's ruling in *Passarella,* set forth the appropriate legal framework for resolving Defendants' undue hardship claim. Accordingly, Plaintiff's claim will proceed to discovery, at which point the parties should develop a factual record regarding whether or not any accommodation might have imposed a legally sufficient hardship. *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 607 (7th Cir. 2022) (Religious objection to vaccination policy rejected on appeal because parties failed to make a factual record: "Once again, if these assertions have merit, there is no record evidence to support them. The plaintiffs should have gathered facts and created a record detailing any wrongful denials of requests for religious exemptions.").

## B. IIED Preemption

Plaintiff also brings a claim for intentional infliction of emotional distress (IIED) under Illinois law, alleging that AMA's handling of his religious exemption request and subsequent termination constituted extreme and outrageous conduct independent of any violation of Title VII. [18] at ¶¶ 141–49. Defendants move to

---

[3] In his Amended Complaint, Plaintiff alleges AMA granted a religious exemption to both his replacement and other employees. [18] at ¶¶ 3, 4. Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiff, as the Court must, these allegations suffice to survive dismissal at this stage. *See Iqbal*, 556 U.S. at 681.

dismiss the IIED claim on the grounds that it is preempted by the Title VII claim, arguing that Plaintiff's allegations are inextricably linked to a claim of religious discrimination. [21] at 12.

The IHRA gives the Illinois Human Rights Commission ("IHRC") exclusive jurisdiction over civil rights violations. 775 ILCS 5/8–111(C) (stating that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act"). A violation of the IHRA includes discrimination based on religion, sex, or handicap with respect to hiring, discharge, discipline, tenure, or other conditions of employment. *Id*. §§ 5/1–102(A); 5/1–103(I),(O),(Q); 5/2–102(A).

To determine whether a state tort claim is preempted by the IHRA, courts assess "whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 517 (1997). When a claim brought under state tort law is "inextricably linked" to conduct actionable under the IHRA, courts have held that it is preempted. See *Geise v. Phoenix Co. of Chicago*, Inc., 159 Ill. 2d 507, 639 N.E.2d 1273, 1276–77 (1994) ("framing a claim in terms of a tort does not 'alter the fundamental nature of [a] cause of action'"). Thus, the critical inquiry here is whether Plaintiff can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA, not whether the facts that support Plaintiff's state law claims could also have supported a discrimination claim. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).

15

In *Martin v. Cook County, Illinois*, the court assessed the plaintiff's IIED claim brought alongside a Title VII religious discrimination claim. No. 17 C 2330, 2018 WL 1942654, at *6 (N.D. Ill. April 25, 2018). There, the plaintiff complained of anonymous hostile messages directed toward her religion, her employer's failures to respond appropriately to the hostility, supervisors' slow response to plaintiff's request for a designated worship space, and alleged retaliation including plaintiff's suspension and the leaking of confidential information from plaintiff's human resources meeting. *Id.* at *7. The court wrote that though these actions were "outlandish," they were "offensive only to the extent they concern" the plaintiff's religious practices and the "retaliation against her efforts to obtain appropriate religious accommodations." *Id.* Put differently, "eliminating the civil rights component" from plaintiff's claims—"that is, stripping it of allegations that involve her religious beliefs or practices or the Probation Department's retaliation for her complaints about how it handled her religious accommodation requests—'takes the air out of the case.'" *Id.* at *6 (citing *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003)). Because the religious discrimination and retaliation allegations formed "the core" of plaintiff's IIED claim, the court concluded the IHRA preempted the claim. *Id.* In contrast, in *Naeem*, the plaintiff pointed to "incessant public criticism of her work performance, their deliberate sabotaging of her computer files, and their piling on of extra work that they knew one person could not accomplish without great difficulty or error." 444 F.3d at 602. Due to this treatment, the plaintiff suffered physical symptoms of anxiety, hair loss, an inability to eat, an inability to breast-feed her new infant son,

16

and led to behavior that drove one of her older sons from the home. *Id.* at 600. The plaintiff was ultimately diagnosed with major depressive disorder and post-traumatic stress disorder. *Id.* The *Naeem* court affirmed the district court's conclusion that the plaintiff had alleged "abundant evidence" of "extreme and outrageous behavior" that could form the basis of an IIED claim independent of any legal duties furnished by the IHRA. *Id.* at 602. The plaintiff's IIED claim rested "not just on behavior" forming the basis of the plaintiff's Title VII discrimination claim, "but rather behavior that would be a tort no matter what the motives of the defendant." *Id.* at 605. Therefore, her claim was not preempted by the IHRA. *Id.*

Here, Plaintiff's allegations of religious discrimination and retaliation form "the core" of Plaintiff's IIED claim and are preempted by the IHRA. *Martin*, 2018 WL 1942654, at *6. Like the plaintiff in *Martin*, whose allegations relied on an "outlandish" religious accommodation process and the mishandling of her employment information, Plaintiff merely borrows his allegations of religious discrimination and retaliation to construct an IIED claim. *Id.* at *7. Indeed, the alleged conduct never extends beyond Defendants' actions as part of the religious accommodation and termination processes. As Plaintiff himself alleges, "Defendants' refusal to grant a reasonable accommodation to the Plaintiff, was intentional, unreasonable, and outrageous" and thus, Defendants caused severe emotional distress in "terminating Plaintiff, after subjecting him to both a lengthy sham religious accommodation process and appeal process." [18] at ¶¶ 142–143. But Plaintiff cannot create an IIED claim based solely on Defendants' conduct as part of

17

the religious accommodation process, Plaintiff's termination, or reporting to the Illinois Unemployment Agency in itself. Just as removing the civil rights component from the plaintiff's claims in *Martin* "took the air out of the case," so too does stripping the civil rights component from Plaintiff's allegations here. 2018 WL 1942654, at *6. And unlike the plaintiff in *Naeem*, Plaintiff here fails to allege any misconduct beyond the behavior forming the basis of his Title VII discrimination claim that would be a tort no matter the motives of Defendants. Therefore, Plaintiff's IIED claim is preempted by the IHRA.

Plaintiff also makes no specific allegations as to the individual defendants beyond their formal involvement in the appeals committee. [18] at ¶¶ 135–149. As to this shortcoming, Plaintiff suggests conducting discovery could reveal an as-yet unknown and unspecified extent to which the individual defendants are involved with the religious accommodation process and how they choose to "further punish" individuals. [23] at 12. Mere speculation about what discovery may or may not reveal, however, fails to withstand a motion to dismiss. *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971–972 (7th Cir. 1996) (Discovery is "not to be used as a fishing expedition."). *See also Todd by Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991) ("Todd's speculation that Merrell Dow must possess unspecified additional information is not sufficient grounds to embark upon a virtually boundless fishing expedition."). At present, Plaintiff fails to allege any extreme or outrageous conduct on the part of the individual defendants and thus the

18

Court grants Defendants' motion as to Count III and the individually named defendants are dismissed without prejudice.

## IV. Conclusion

For the reasons explained above, this Court grants in part, and denies in part, Defendants' motion to dismiss [21]. Namely, the Court grants Defendants' motion to dismiss the claim for intentional infliction of emotional distress (Count III) and to dismiss the individual defendants from the case, but this Court denies the motion as to the Title VII religious discrimination claim (Count I).

Dated: March 25, 2026                    Entered:

John Robert Blakey
United States District Judge